# UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | | |
|---|---|---|
| Savent Financial, LLC, | § | |
| Highcrest Lending Corporation, Highcrest | § | |
| Opportunities Lending Corporation, | § | |
| SFL-HLC ABS Facility, LLC, and SFL- | § | |
| HOLC ABS Facility, LLC, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 2:25-cv-00198-KHR |
| | § | |
| Modo Capital, LLC, Renegade Renewables, | § | |
| LLC, BPF Acquisition Co. Series 11, LLC, | § | |
| Kevin Adler, | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANT COMPANIES' SUPPLEMENTAL RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR IMMEDIATE APPOINTMENT OF A RECEIVER

Modo Capital, LLC ("Modo"), Renegade Renewables, LLC ("Renegade" and together with Modo, the "Borrowers"), and BPF Acquisition Co. Series 11, LLC ("BPF" and together with Borrowers, the "Defendant Companies"), file this Supplemental Response in Opposition to Plaintiffs'[1] Emergency Motion for Immediate Appointment of a Receiver [ECF No. 16] (the "Motion") and would respectfully show the Court as follows:[2]

## I.    INTRODUCTION

Borrowers have exercised the remaining three land options (including the Sunset Option) and have agreed with Savent on the mortgage documents needed to complete the purchase of these

---

[1] Plaintiffs are Savent Financial, LLC ("Savent" or "Lender"), Highcrest Lending Corporation, Highcrest Opportunities Lending Corporation ("Highcrest"), SFL-HLC ABS Facility, LLC, and SFL-HOLC ABS Facility, LLC (collectively, "Plaintiffs").

[2] This supplemental response is filed subject to and without waiving Defendant Companies' (whether filed collectively or individually) motions to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction and/or failure to state a claim under Rule 12.  BPF objects that this Court has any personal jurisdiction over it.

land parcels.  The alleged urgent need to appoint a receiver to prevent the land options from expiring is therefore no longer necessary, nor was it ever warranted.

Borrowers were never in default of the loan documents.  Lender, in fact, acknowledged just a few months ago that it was "not aware of any Events of Default" and that it (and Highcrest) was going to work in "good faith" and "cooperate" with Borrowers in their effort to find additional funding or to sell the Project.  But Plaintiffs' attitude quickly changed when they learned that Borrowers had a Qualified Buyer[3] interested in acquiring the Project (and even though it would pay Lender back in full).  The path toward a sale to such a Qualified Buyer was both anticipated and negotiated by the Parties.  Plaintiffs, however, wanted unbargained for equity and all of the upside in the Project, and had been looking for an angle to do so through one-sided offers made to Borrowers.  When that did not work, and a bona fide third party (one not controlled by the Plaintiffs) emerged as a serious purchaser, Plaintiffs abruptly and prematurely filed this lawsuit. In doing so, they contrived manufactured defaults and asserted baseless fraud claims in an effort to quickly seize control of the Project through a receivership, before the Qualified Buyer's due diligence progressed further, and to force Borrowers to divert scarce resources toward defending this unfounded lawsuit.  Furthermore, Plaintiffs required that before they met with the investor, that Borrowers provide the investor with the sixty plus page complaint and that the meeting be recorded.  Plaintiffs' conduct has violated their own agreements to cooperate in good faith with Borrowers to sell the Project and to preserve the parties' economic interests.  Finally, the alleged defaults are in direct contradiction with the plain language in the loan documents and the alleged fraud has not been (and never will be) proven.

---

[3] A Qualified Buyer is defined in the Side Letter Agreement as "a buyer with a track record of purchasing or developing solar projects of greater than 200 MW DC capacity or a balancee sheet of greater than $100,000,000 in net tangible assets."  [ECF No. 41, Ex. A-5, ¶ 2.3.3, p. 5]

Even if there were defaults (whether now or in the future), the appointment of a receiver lies within the discretion of the Court, and the Tenth Circuit has emphasized that appointing a receiver is a harsh remedy that is only justified in extreme situations.  Plaintiffs carry the burden of showing that a receiver is necessary and that there has to be a substantial showing that their rights will be or may be jeopardized unless a receiver is appointed.  Plaintiffs come into this Court with unclean hands seeking an extraordinary remedy that interferes with Borrowers' ownership of the Project when there has been no showing of an extreme situation where Plaintiffs' rights will be jeopardized.  Appointing a receiver is not justified when Borrowers have a qualified investor at the table to acquire the Project and pay Lender back in full, and when Plaintiffs are violating their own expressed duties to cooperate and work in good faith with Borrowers to sell the Project.  The better course is to preserve the status quo and the parties' economic interests in the Project, as the parties agreed in the Side Letter Agreement.

Based on the record before the Court, and in equity and good conscience, the Motion should be denied.

## II.    SUPPLEMENTAL ARGUMENT

### A.    The Land Options are Exercised.

The Defendant Companies' co-managers Bill Heck and Allen Funk have the full consent of the membership and authority to exercise the land options and enter into financing agreements with Lender for the purchase of the same.  [Ex. A, ¶ 2]  As of the filing of this supplemental response, Borrowers have exercised all of the land options, including the Miller, Hays, Johnson and Sunset options.  [*Id.*, ¶ 3]  Further, Borrowers have agreed with Savent to the terms of the financing documents to purchase the land, and intend to execute the same.  [*Id.*]  Thus, Plaintiffs' alleged urgent need for a receiver has been removed and is no longer necessary.  The Motion should be denied.

**B.      There was Never a Default.**

When there is no default, the Court never has to decide whether to appoint a receiver.  Here, there is no default.  On April 16, 2025, Lender acknowledged "that as of the execution date, ***it is not aware of any Events of Default*.**"  [ECF No. 41, Ex. A-1, ¶ 18, p. 14 (emphasis added)]  Nothing has changed from a few months ago that all of a sudden created a default.  Plaintiffs, however, created the appearance of defaults coupled with alleged fraud in order to urgently seek a receiver that would gain control of the Project and all of its upside before Borrowers could sell it.  All of Plaintiffs alleged defaults were either known at the time Lender executed the April 2025 Loan Documents or were never defaults at all according to the plain reading of the Business Loan Agreement at paragraph 18, Section (c)(viii).  Paragraph 18(c)(viii) states that Borrowers will be in default if:

> Borrower is unable to continue ordinary operation of its business without incurring material additional indebtedness, ***other than** **as previously contemplated or discussed with the Lender*** (including but not limited to, fees or other charges charged by Guggenheim Securities, LLC ("Guggenheim"), fees or other charges charged by MUFG***, additional money to be paid under existing Purchase Orders, money that needs to be paid to BayWa over the next three months, payments to rating agency or law firms related to the Project, or purchase price payments to landowners to execute any Real Estate Option that cannot be, or has not been, extended)***;

[*Id*., ¶ 18(c)(viii), p. 13 (emphasis added)]

Plaintiffs' evidence of alleged defaults consisted of testimony and emails regarding payments that Borrowers owed to BayWa, law firms and land owners to purchase land—all of which were specifically carved out of the loan agreement as not being an event of default.  Moreover, instead of making "protective payments" to BayWa in an attempt to manufacture a default, Plaintiffs should have worked in good faith with Borrowers to consider making the payments as subsequent loan advances pursuant to new loan agreements as the parties agreed to do in the Side Letter Agreement.  [ECF No. 41, Ex. A-5, p. 3]  There is no default, and thus the

Court should not even consider appointing a receiver. Moreover, Plaintiffs have failed to show any support for their alleged fraud claim, which should not be considered by this Court at this early juncture of the case.

## C.     A Receivership is not Warranted.

Appointing a receivership is certainly not warranted on the current record before the Court as discussed above. Plaintiffs stated purpose for urgently seeking a receiver was to extend or exercise the Sunset Option—that issue is now moot. Plus, there are no current defaults. But even after the loans mature on September 30th, a renewed motion for the appointment of a receivership will still not be warranted.

"The appointment of a receiver or the refusal to appoint rests in the sound judicial discretion of the trial court." *Schiermeyer on Behalf of Blockchain Game Partners, Inc. v. Thurston*, 746 F. Supp. 3d 1188, 1192 (D. Utah 2024) (citing *Skirvin v. Mesta*, 141 F.2d 668, 673 (10th Cir. 1944)). Receivership is not a positive right; rather, it is an extraordinary equitable remedy justifiable only in extreme situations and which "should be exerted sparingly." *Id*; *Waag v. Hamm*, 10 F. Supp. 2d 1191, 1193 (D. Colo. 1998); *see also Shoemaker Corp. III, Inc. v. Garrett*, 704 F. Supp. 3d 1222, 1243 (N.D. Okla. 2023) ("Appointing a receiver before a trial . . . is an even harsher remedy"). Even where a clause in the parties' agreement provides the right to apply for and obtain a receiver, the appointment of a receiver is not automatic. *Gage v. First Fed. Sav. & Loan Ass'n of Hutchinson, Kan.*, 717 F. Supp. 745, 750 (D. Kan. 1989). Instead, the Court must consider a variety of factors, and the existence of such an agreement does not supplant this analysis. *USAA Mut. Funds Tr. v. Jordanelle Special Serv. Dist.*, No. 2:14-CV-787 TS, 2015 WL 8489959, at *9 (D. Utah Dec. 9, 2015).

The party seeking the receiver has the burden of showing that a receiver is necessary. *Sterling Sav. Bank v. Citadel Dev. Co., Inc.*, 656 F. Supp. 2d 1248, 1262 (D. Or. 2009). The

parties' consent to a receiver does not affect the Court's need to weigh certain factors in its determination nor does it reduce the burden on the party seeking a receiver to produce evidence of these factors. *Id.*, *see also USAA Mut. Funds Tr.*, 2015 WL 8489959, at *9 (the fact that an agreement provides a plaintiff with the ability to seek a receiver does not supplant the court's need to consider factors in determining whether to appoint one). Ordinarily, a receiver will not be appointed unless the plaintiff makes a substantial showing that he has rights that will be or may be jeopardized unless a receiver is appointed. *Shoemaker Corp. III, Inc.*, 704 F. Supp. 3d at 1242–43.

Here, Plaintiffs have come into this Court asking for the extraordinary equitable remedy of a receivership when they have violated their own duty to work in good faith with Borrowers to sell the Project. As of August 6th, Borrowers have an executed term sheet in place with a qualified investor who will acquire the Project and fully repay Lender. [Plaintiffs' Ex. 34] Plaintiffs have sought every way to tank that deal so that they can take over the Project for their benefit, including all of the projected upside in the Project. For instance, Plaintiffs will not meet with the investor unless (i) all parties agree that the meeting be recorded and (ii) Borrowers provide the sixty-plus page complaint (filled with baseless fraud claims) to the investor prior to the meeting. [Hearing Transcript, pp. 56 and 72] Plaintiffs' intentions are clear, as their proposed receivership order states that "[t]he Receiver **shall report to Plaintiffs** in regard to the administration of the receivership estate as Plaintiffs may request, and any matters of common interest **shall be subject to appropriate privileges**." [ECF No. 15-1, p. 12, ¶ 28 (emphasis added)] In other words, the receiver would work at the direction of Plaintiffs and all their communications would be privileged. Plaintiffs' counsel stated that he envisions a receivership that will help finance or sell the Collateral (which counsel says is really the Project). [Hearing Transcript, p. 120] If that is truly the case (and it is certainly overbroad), then the receivership is absolutely unnecessary

because Borrowers have a Qualified Buyer in place to acquire the Project.  Appointing a receiver that reports to and has confidential communications with only Plaintiffs will jeopardize the potential acquisition.  Borrowers know the Project better than anyone, and have spent years of their own time and effort, and millions of their own funds to get it to where it is now.  A receivership is not necessary, nor is there an extreme situation that justifies appointing one in the first place.

The better course is to allow the acquisition with the investor and its financial advisors at Goldman Sachs to move forward to due diligence, and to provide the Court with periodic status reports on those negotiations.  The Motion at this time should be denied.

**D.    The Proposed Receivership is Overbroad.**

Plaintiffs' counsel stated that the scope of their requested receiver is limited to a "collateral receiver" and not an "equity receivership that takes over the management", although counsel reserved the right to request a broader scope.  [Hearing Transcript, p. 119-120]  Plaintiffs' proposed order, however, appoints a receiver who "is authorized to take ***all actions to manage or maintain business operations of the Project***, including, as applicable, making payments to creditors, employees, and agents ***of the Project*** and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate."  [ECF 15-1, p. 11, ¶ 24 (emphasis added)]  The proposed order further authorizes the receiver to "take immediate possession of all assets, bank accounts or other financial accounts, books, records, and all other documents or instruments relating to the Collateral ***or Project***."  [*Id*, p. 7, ¶ 14 (emphasis added)]  The proposed order also allows the receiver to perform any acts as he deems necessary to "***ensure the successful completion of the Project.***"  [*Id*., p. 5, ¶ 3.K. (emphasis added)]  Plaintiffs' requested receiver is overbroad, and is not limited to the Collateral as defined in the Security Agreement at Section 1.1.3.  [Defs' Resp., Ex. A-3]

Defendant Companies object to the scope of the receivership. Plaintiffs' proposed receivership should be denied, or in the alternative, limited to the Collateral as defined in the Security Agreement.

## III. CONCLUSION

For the foregoing reasons, Defendant Companies respectfully request that the Court deny Plaintiffs' Motion and grant Defendant Companies such other and further relief, whether at law or in equity, to which they are justly entitled.

Respectfully submitted,

/s/ Stuart R. Day
STUART R. DAY WSB #5-2244
WILLIAMS, PORTER, DAY & NEVILLE,
P.C.
159 NORTH WOLCOTT, SUITE 400
CASPER, WY 82601
307-265-0700 TELEPHONE
307-266-2306 FACSIMILE

James C. Scott *(Pro hac vice)*
State Bar No. 24056287
jim.scott@kellyhart.com
Matthew A. Francis *(Pro hac vice)*
State Bar No. 24142917
matthew.francis@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500  (telephone)
(817) 878-9280  (facsimile)

ATTORNEYS FOR DEFENDANTS
MODO CAPITAL, LLC, RENEGADE
RENEWABLES, LLC AND BPF
ACQUISITION CO. SERIES 11, LLC

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 26, 2025, a true and correct copy of the foregoing was served on all counsel of record via the Court's electronic-filing system as permitted under the Federal Rules of Civil Procedure.

*/s/ Stuart R. Day*
Stuart R. Day